# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

ADAM S. MYERS,           Case No. 1:10-cv-343
      Petitioner,

                                      Bertelsman, J.

      vs.                       Bowman, M.J.

WARDEN, WARREN           **REPORT AND**
CORRECTIONAL INSTITUTION,      **RECOMMENDATION**
      Respondent.

Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The case is before the Court on the petition, respondent's return of writ with exhibits, and petitioner's reply to the return of writ.  (Docs. 1, 6, 7).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On January 31, 2007, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with two counts of murder in violation of Ohio Rev. Code § 2903.02(B), one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1), and one count of endangering children in violation of Ohio Rev. Code § 2919.22(B)(1).  (Doc. 6, Ex. 1).  The charges arose when petitioner's three-month-old son died as a result of "blunt impact injuries" to his torso, which were incurred when he was alone with petitioner.  (*See* Doc. 6, Tr. 6-7).

On July 23, 2007, petitioner entered a guilty plea to one of the murder counts, which carried a stated "[p]otential [s]entence [r]ange" of fifteen (15) years to life, in exchange for the dismissal of the remaining three counts and a community-control violation charge in another criminal case. (*See* Doc. 6, Exs. 3-4 & Tr. 2-3).  Before accepting petitioner's guilty plea, the trial court held a

hearing where the court emphasized at the outset that the plea agreement involved an "automatic 15 [year] to life sentence."  (Doc. 6, Tr. 3).  The colloquy continued in relevant part:

> THE COURT:  Bottom line, he's going to get 15 to life.  That's all right with the State and the defendant?
>
> [PROSECUTOR]:  It is, Your Honor.
>
> THE COURT:  This is what your client wants to do?
>
> [DEFENSE COUNSEL]:  It is, Your Honor.
>
> THE COURT:  And you're Adam Myers?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And do you understand the nature of the plea agreement?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Do you understand the charge?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:  And you make this plea voluntarily and of your own free will?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Okay.  It's a murder, and it carries 15 to Life.  You have to serve the full 15 years before you can be considered for parole, and it could be denied, you could end up serving a full life term.  Do you understand that?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  If you would be released from prison, you would be automatically on five years post release control.  And if you violate the conditions, they could then send you back to prison for nine months for every violation.  If you commit a felony while on post release control, the judge on the felony case could send you to prison and run that sentence consecutive to how many years you have left on post release control, or one year, whichever is later.  And just a straight violation of rules, they could just keep sending you back for nine months, actually for the rest of your life. That's basically the penalties.

(Doc. 6, Tr. 3-5).

At the close of the hearing, the court accepted petitioner's guilty plea and proceeded to sentence petitioner to a prison term of fifteen (15) years to life in accordance with the plea agreement. (Doc. 6, Tr. 14-15, 21). In the final judgment entry filed on July 23, 2007, the court further ordered:

> As part of the sentence in this case, the defendant shall be supervised by the Adult Parole Authority after defendant leaves prison, which is referred to as post-release control, for five (5) years.
>
> If the defendant violates post-release control supervision or any condition thereof, the Adult Parole Authority may impose a prison term, as part of the sentence, of up to nine (9) months, with a maximum for repeated violations of fifty percent (50%) of the stated prison term. If the defendant commits a new felony while subject to post-release control, the defendant may be sent to prison for the remaining post-release control period or twelve (12) months, whichever is greater. . . .

(Doc. 6, Ex. 8, attachment).

### State Appeal Proceedings

Petitioner did not perfect a timely appeal to the Ohio Court of Appeals. However, he was granted a delayed appeal by the Ohio Court of Appeals, First Appellate District, which also appointed counsel to represent petitioner on appeal. (*See* Doc. 6, Exs. 5, 7). In the appellate brief filed by counsel, petitioner presented the following assignments of error:

> 1. The trial court erred to the prejudice of defendant by accepting a guilty plea that was not made knowingly, voluntarily, and intelligently.
>
> <u>Issues Presented for Review and Argument:</u>
>
> The trial court erred when it accepted Adam's guilty plea when, in consequence of the court's erroneous advice to him concerning post-release control, Adam necessarily was unaware of the maximum penalty to which he was exposed by his plea.
>
> When a trial court accepts a guilty plea without complying with Crim. R. 11, it is a violation of due process of law and the guilty plea is invalid.
>
> 2. Defendant was deprived of his constitutional right to effective assistance of counsel when defense counsel failed to properly inform him of the consequences of

3

his plea, and when defense counsel failed to move the court to withdraw his plea of guilty.

Issue Presented for Review and Argument:

When a guilty plea is not made in a knowing, intelligent, and voluntary manner, and when trial counsel fails to assist the defendant in his efforts to withdraw the plea, counsel has provided ineffective assistance.

3.  Where an indictment does not expressly charge the mens rea element of a crime, the defendant's state constitutional right to a grand jury indictment and his state and federal constitutional rights to due process are violated.

Issue Presented for Review and Argument:

An indictment that fails to include an essential element is fatally defective, is voidable for lack of subject matter jurisdiction or for the failure to charge an offense, and may be challenged for the first time on appeal.

(Doc. 6, Ex. 8).

On December 17, 2008, the Ohio Court of Appeals issued a Judgment Entry overruling the assignments of error and affirming the trial court's judgment.  (Doc. 6, Ex. 10).

Petitioner filed a timely *pro se* appeal to the Ohio Supreme Court.  (Doc. 6, Ex. 11).  In his memorandum in support of jurisdiction, petitioner raised the same claims of error that had been presented on direct appeal to the Ohio Court of Appeals.  (*See* Doc. 6, Ex. 12).  On June 3, 2009, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (Doc. 6, Ex. 13).

## Federal Habeas Corpus

Petitioner filed the instant habeas corpus petition in May 2010.  (*See* Doc. 1).  He alleges the following grounds for relief:

**Ground One:** The trial court erred to the prejudice of defendant by accepting a guilty plea that was not made knowingly, voluntarily.

**Supporting Facts**.  The trial court erred when it accepted Adam's guilty plea when in consequence of the court's erroneous advice to him concerning post-release

control, Adam necessarily was unaware of the maximum penalty to which he was exposed by his plea.

**Ground Two:**  Defendant was deprived of his constitutional right to effective assistance of counsel when defense counsel failed to properly inform him of the consequences of his plea, and when defense counsel failed to move the court to withdraw his plea of guilty.

**Supporting Facts:**  When a guilty plea is not made in a knowing, intelligent, and voluntary manner and when trial counsel fails to assist the defendant in his efforts to withdraw the plea counsel has provided ineffective assistance.  Counsel only received discovery (3) three days before trial[.]  [T]he defense failed to investigate the case and was not prepared to put on a defense therefore prejudicing Myers of his right of a fair trial.

**Ground Three:**  Where an indictment does not expressly charge the mens rea element of a crime, the defendant's state constitutional right to a grand jury indictment and his state and federal constitutional rights to due process are violated.

**Supporting Facts:**  An indictment that fails to include [an] element is fatally defective, is voidable for lack of subject matter jurisdic[]tion or for the failure to charge an offense and may be challenged for the first time on appeal

(Doc. 1, pp. 8-9).

## II.  OPINION

### A.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground One Attacking The Validity Of His Guilty Plea Because He Was Misinformed That He Was Subject To Post-Release Control Sanctions

In Ground One of the petition, petitioner alleges that his guilty plea is invalid because during the plea colloquy, as well as in the final sentencing entry, the trial court incorrectly informed him that if he were to be released from prison, he would be subject to a five-year term of post-release control, and that if he violated any conditions of post-release control, he faced re-incarceration for a period of "up to nine (9) months, with a maximum for repeated violations of fifty percent (50%) of the stated prison term."[1]  (*See* Doc. 1, p. 8; *see also* Doc. 6, Ex. 8, attachment; Tr. 3-5).  Petitioner

---

[1]The written plea entry executed by petitioner and filed with the court similarly provided that "[a]fter release from prison, [petitioner] will be supervised on post-release control" and could be returned "to prison for up to nine (9) months for each violation of . . . conditions, for a total of 50% of [the] stated term."  (*See* Doc. 6, Ex.3 ).

contends that because of the court's "erroneous advice" concerning post-release control, he was "unaware of the maximum penalty to which he was exposed by his [guilty] plea" and, therefore, did not knowingly, intelligently, and voluntarily enter the plea. (Doc. 1, p. 8). The claim was raised on appeal to the Ohio Court Appeals and Ohio Supreme Court and is subject to review on the merits.

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing petitioner's claim challenging the validity of his guilty plea. Citing state case-law, the court overruled the assignment of error, reasoning as follows:

> Myers's first assignment of error alleges that the trial court erred in accepting his guilty plea because it was not knowing, intelligent, and voluntary. Myers argues that his plea was involuntary because the trial court erroneously informed him at the plea hearing and at sentencing that if he should be released from prison he would be subject to post-release control. The sentencing entry also stated Myers was subject to post-release control. The trial court's explanation of post-release control and the sentencing entry were incorrect. Myers is subject to parole, not to post-release control. Myers argues that, due to the trial court's misinformation, he did not understand the maximum sentence he faced.
>
> The trial court informed Myers that he faced 15 years' to life imprisonment. Life imprisonment was the maximum sentence that Myers could have received. Myers was fully aware that he potentially faced life in prison. The trial court's erroneous reference to post-release control did not affect the maximum sentence or convey to Myers that he had a right to early release. Therefore, the trial court's statements about post-release control were not prejudicial. Further, the trial court did not err in failing to inform Myers about parole because it did not affect the maximum sentence.
>
> The trial court substantially complied with the requirement in Crim.R. 11(C)(2)(a) that the court inform the offender of the maximum penalty he faces. The court complied with Crim.R. 11(C) in all other respects. We hold that Myers's plea was entered knowingly, intelligently, and voluntarily. . . .

(Doc. 6, Ex. 10, pp. 1-2) (footnote citations omitted).

Generally, in cases such as this involving a claim that was adjudicated on the merits by the state courts, the standard of review to apply is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue unless the state courts' adjudication of the claim either:

6

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). The provision applies even in cases where the state courts summarily reject a claim or issue a ruling "unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

A legal principle is "clearly established" for purposes of habeas corpus review under § 2254(d)(1) "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* __ U.S. __, 130 S.Ct. 1171, 1173 (2010). "[A] federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor,* 529 U.S. 362, 390 (2000)), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851).

In addition, the "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings:

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts. . . . The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. . . . The focus on the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority

7

to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.  Moreover, under the "unreasonable application clause" inquiry, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision."  *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In the instant case, the Court is precluded from considering petitioner's claim to the extent petitioner seeks to challenge the state appellate court's determination of substantial compliance with Ohio R. Crim. P. 11, or otherwise alleges that the trial court failed to satisfy the requirements of Ohio R. Crim. P. 11 when it misinformed petitioner about post-release control.  The federal habeas court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* __ U.S. __, 131 S.Ct. 13, 16 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Therefore, to the extent petitioner claims he is entitled to relief because the trial court violated an Ohio criminal procedural requirement during the plea-taking process, he does not present a cognizable federal constitutional claim subject to review in this proceeding.  *Cf. Huber v. Warden, Lebanon Corr. Inst.,* No. 3:08cv0244, 2011 WL 2214167, at *5 (S.D. Ohio May 13, 2011) (Ovington, M.J.) (Report & Recommendation), *adopted,* 2011 WL 2214935 (S.D. Ohio June 7,

8

2011) (Rice, J.).

The Court, however, does have jurisdiction to consider the constitutional issue raised by petitioner in arguing that his guilty plea was not knowingly and voluntarily entered because he was not made aware of the maximum sentence he faced.

Because a guilty plea operates as a waiver of important constitutional rights, the Fourteenth Amendment's Due Process Clause requires that a guilty plea not only be made voluntarily, but also knowingly and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf,* 545 U.S. 175, 183 (2005) (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)); *see also Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994); *United States v. Brown,* 391 F. App'x 524, 527 (6th Cir. 2010) (and cases cited therein). Voluntariness is determined by analzying whether the plea was obtained "by any sort of threats or violence, . . . any direct or implied promises, . . . [or] the exertion of any improper influence." *Brady,* 397 U.S. at 753 (internal quotation and citation omitted); *see also Brown,* 391 F. App'x at 527 (and cases cited therein). The question whether a plea was entered knowingly and intelligently turns on whether the defendant understood the nature of the charges against him and was "aware of the direct consequences of the plea." *Brown,* 391 F. App'x at 527; *Mitchell v. Brunsman*, No. 1:09cv632, 2011 WL 1398493, at *3 (S.D. Ohio Apr. 12, 2011) (Spiegel, J.).

The Supreme Court has held that a guilty plea satisfies due process if it appears on consideration of "all the relevant circumstances surrounding" the plea, that it was entered "by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and the plea was not induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable

promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."  *Brady*, 397 U.S. at 749, 755 (internal quotation and citation omitted).  In *Brady*, the Court emphasized:

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.  A defendant is not entitled to withdraw his plea merely because he discovers . . . after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Id.* at 757.  Relying on *Brady* and other Supreme Court precedents, the Supreme Court reiterated in a subsequent decision that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."  *United States v. Ruiz*, 536 U.S. 622, 630 (2002).  As the Court pointed out in *Ruiz*, "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances–even though the defendant may not know the *specific detailed* consequences by invoking it."  *Id.* at 629 (emphasis in original); *see also Iowa v. Tovar,* 541 U.S. 77, 92 (2004).

In construing the Supreme Court precedents, the Sixth Circuit has held that although the defendant must be apprised of the "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all its possible "collateral consequences."  *See, e.g., King,* 17 F.3d at 153; *see also Kratt v. Garvey,* 342 F.3d 475, 485 (6th Cir. 2003).  Many lower courts, including the Sixth Circuit, have stated that "the distinction between a direct and collateral consequence turns on whether the result flowing from the plea is definite, immediate, and

10

automatic." *See King*, 17 F.3d at 154 (and cases cited therein).[2]

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *Ruelas v. Wolfenbarger,* 580 F.3d 403, 408 (6th Cir. 2009) ("While a defendant need not know all the possible consequences of his plea, like the loss of his right to vote or own a gun, or the effect of a future sentence, he must be aware of the maximum sentence to which he is exposed."), *cert. denied,* 130 S.Ct. 3322 (2010); *see also King,* 17 F.3d at 154; *Hart v. Marion Corr. Inst.,* 927 F.2d 256, 259 (6th Cir. 1991); *Brown,* 391 F. App'x at 528; *Boyd v. Yukins,* 99 F. App'x 699, 703 (6th Cir. 2004); *Mitchell, supra,* 2011 WL 1398493, at *3. On the other hand, it is also well-settled that the trial court is not obligated to provide any information to the defendant about his parole eligibility. *See, e.g., Hill v. Lockhart,* 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); *see also King,* 17 F.3d at 154 (and cases cited therein) (on entering a guilty plea, "a defendant need not be informed of the details of his parole eligibility, including the possibility of being ineligible for parole").

_____

[2]It is noted that in a recent decision, the Supreme Court pointed out that "[t]here is some disagreement among the courts over how to distinguish between direct and collateral consequences." *Padilla v. Kentucky,* __ U.S. __, 130 S.Ct. 1473, 1481 n.8 (2010). Without deciding the issue, the Court carved out an exception for cases involving the failure of defense counsel to advise a noncitizen defendant of the possible deportation consequences of his guilty plea. Specifically, the Court reversed the state supreme court's decision that petitioner had failed to allege a cognizable ineffective assistance of counsel claim because advice about the "risk of deportation concerned only collateral matters . . . outside the sentencing authority of the state trial court." *Id.* at 1481, 1486-87. In so holding, the Supreme Court emphasized the severity of the deportation penalty and that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.* at 1481. The Court, therefore, found "it 'most difficult' to divorce the penalty from the conviction in the deportation context" and, more specifically, that "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or collateral consequence." *Id.* at 1481-82. In light of those concerns, the Court refused to apply the "collateral versus direct distinction" in evaluating the petitioner's ineffective assistance of counsel claim and held that petitioner had "sufficiently alleged that his counsel was constitutionally deficient" in that unique situation. *Id.* at 1482, 1487. The Court's holding in *Padilla* does not apply to this case, which does not involve any concerns about the risk of deportation.

On federal habeas review, "[a] state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness" under 28 U.S.C. § 2254(e)(1), which is "rebuttable only by clear and convincing evidence." *Wright v. Lafler*, 247 F. App'x 701, 705 (6th Cir. 2007) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)); *see also Carethers v. Wolfenbarger,* 407 F. App'x 14, 17 (6th Cir. 2011). "When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia*, 991 F.2d at 326; *see also Carethers*, 407 F. App'x at 17.

In this case, respondent has produced the state-court transcript, which reveals that the court expressly advised petitioner at the plea hearing that he was "mak[ing] a complete admission of [his] guilt" and was giving up his rights to a jury trial, where the State was required to prove his guilt beyond a reasonable doubt; to confront witnesses against him; and to subpoena witnesses on his behalf. (Doc. 6, Tr. 8-10). Petitioner stated that he understood. (Doc. 6, Tr. 8-10). In addition, petitioner was informed of the nature of the crime to which he was pleading guilty and that it carried an "automatic 15 [year] to life sentence." (Doc. 6, Tr. 3, 6-8). The court specifically asked petitioner whether he understood that he was required "to serve the full 15 years before [he could] be considered for parole" and that he "could end up serving a full life term." (Doc. 6, Tr. 4). In response, petitioner affirmed that he understood. (Doc. 6, Tr. 4). He also affirmed that he was entering the plea "voluntarily and of [his] own free will." (Doc. 6, Tr. 4).

Petitioner does not argue that he lacked the mental capacity or otherwise failed to understand the information that was relayed to him during the plea proceeding. Instead, he contends that because the trial court also erroneously advised him that he would be subject to post-release control sanctions if released after serving the minimum 15-year prison term, he did not fully understand the

12

maximum sentence that he faced was a life term of imprisonment.

As the Ohio Court of Appeals determined on direct appeal, the trial court erred in advising petitioner about post-release control sanctions.  In Ohio, defendants convicted of certain classified felonies are subject under Ohio Rev. Code § 2967.28 to a mandatory term of post-release control, which the Ohio Supreme Court has defined as "a period of supervision that occurs *after* a prisoner has served his or her prison sentence and is released from incarceration, during which the individual is subject to specific sanctions with which he or she must comply."  *See State v. Clark*, 893 N.E.2d 462, 470 (Ohio 2008) (emphasis added).  Violations of post-release control conditions "may result in additional punishment, such as a longer period of control, more restrictions during the control period, or a prison term of up to nine months per violation, subject to a cumulative maximum of one-half of the original stated prison term."  *Id.*  The Ohio Supreme Court has held that a guilty plea cannot be accepted as validly entered unless the defendant, who faces additional punishment of up to fifty percent of the original sentence for violating post-release control conditions, is informed of the mandatory term of post-release control as "a part of the maximum penalty."  *State v. Sarkozy*, 881 N.E.2d 1224, 1229 (Ohio 2008).

Parole, like post-release control, is a form of supervised release.  *See Clark,* 893 N.E.2d at 470.  However, that is where the similarity ends.  When a person is paroled pursuant to Ohio Rev. Code § 2967.13, "he or she is released from confinement *before* the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release."  *Id.* (emphasis added).  "If a paroled person violates the various conditions associated with parole, he or she may be required to serve the remainder of the original sentence."  *Id.* Moreover, parole is not guaranteed once a prisoner has met the minimum eligibility requirements, but rather is a matter within the state parole authority's "wide-ranging discretion" to refuse or grant.

13

*Id.*  Because parole is not mandatory and cannot serve to lengthen the defendant's custody status beyond the original sentence that was imposed, it is not considered "part of the maximum possible penalty," which must be disclosed in a plea colloquy.  *See id.*; *cf. Hill*, 474 U.S. at 56; *King,* 17 F.3d at 154 (and cases cited therein).

Here, because petitioner pleaded guilty to an offense carrying an indefinite prison term of fifteen years to life, he could not be subjected to post-release control sanctions.  Instead, he faced only the possibility of supervised release on parole after meeting minimum eligibility requirements.  Nevertheless, although petitioner was misinformed both at the plea proceeding and at sentencing that his sentence included post-release control sanctions, the record belies his contention that the court's error misled him into believing that the maximum term of imprisonment he faced was less than a life term.

As the Ohio Court of Appeals reasonably found, petitioner was made "fully aware" during the plea colloquy of the "automatic" sentence he would receive upon entry of his guilty plea, which included a maximum prison term of life.  (Doc. 6, Ex. 10, p. 2 & Tr. 3).  Petitioner affirmed that he understood that he could be denied parole after serving the minimum 15-year prison term and that he "could end up serving a full life term."  (Doc. 6, Tr. 4).  Even after the court went on to discuss post-release control, the court expressly stated (albeit incorrectly) that if petitioner violated the release conditions, "they could just keep sending you back for nine months, *actually for the rest of your life*."  (Doc. 6, Tr. 5) (emphasis added).  Moreover, later in the proceeding, petitioner specifically acknowledged that fact when he stated, "I just signed my life away."  (Doc. 6, Tr. 13).

Even assuming that the misinformation provided to petitioner regarding his eligibility for post-release control in and of itself triggers constitutional concerns, petitioner is not entitled to relief absent a showing of a "reasonable probability that, but the error, he would not have entered the

plea." *See United States v. Davis*, __ F.3d __, No. 08-6173, 2011 WL 1754082, at *4 (6th Cir. May 10, 2011), *petition for cert. filed*, __ U.S.L.W. __ (U.S. July 25, 2011) (No. 11-5558); *cf. Hill,* 474 U.S. at 56-58 (requiring a showing of "prejudice" from a defendant seeking to challenge the validity of his guilty plea on the ground that his trial attorney supplied him with erroneous information about parole eligibility). No such showing has been made in this case. As discussed above, it is clear from the record that petitioner was well aware of the sentence he would receive on entering his guilty plea. Moreover, there is no evidence in the record even remotely suggesting that petitioner was led to expect or in fact expected to be released on either parole or post-release control prior to the expiration of his 15-year to life sentence. To the contrary, the trial court made it clear to petitioner during the plea colloquy that release after fifteen years was only a possibility and that he could end up spending the rest of his life in prison. Therefore, it is highly unlikely that the misinformation regarding post-release control influenced or was even considered by petitioner in deciding whether or not to plead guilty.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas corpus relief based on the claim alleged in Ground One challenging the validity of his guilty plea. Petitioner fails to state a cognizable claim subject to federal habeas review to the extent he alleges that the trial court committed reversible error under Ohio R. Crim. P. 11 when it misinformed him about post-release control. In addition, petitioner has not demonstrated that the state courts' determination that he entered his guilty plea knowingly, intelligently and voluntarily either is contrary to or involves an unreasonable application of clearly-established Supreme Court precedents addressing the constitutionality of guilty pleas.

**B. Petitioner Is Not Entitled To Relief Based On The Sixth Amendment Claim Alleged In Ground Two Challenging The Effectiveness Of His Trial Counsel**

In Ground Two of the petition, petitioner generally alleges that his trial counsel was

ineffective by failing to properly inform him of the consequences of his guilty plea and by failing

to file a motion to withdraw the plea.  (Doc. 1, p. 8).  In support of this claim, he states only that

counsel "failed to investigate the case and was not prepared to put on a defense" upon receiving

discovery three days before the scheduled trial date.  (Doc. 1, p. 8).  In his reply to the return of writ,

petitioner also has attached a portion of his appellate brief to the Ohio Court of Appeals, which

includes the following argument:

> [Petitioner] claims that he was not properly represented in the court below.  In
> correspondence, [petitioner] assails the performance of tr[ia]l counsel; he claims that
> counsel was not prepared for trial, and that counsel pressured him into taking a deal.
> [Petitioner's] claims of deficient performance, however, are based on
> communications that are largely *dehors* the record.  He concedes that allegations of
> ineffectiveness based on facts not appearing in the record should be reviewed
> through the postconviction remedies of R.C. 2953.21.  However, [petitioner]
> respectfully moves this Court to examine trial counsel's performance in accordance
> with *Strickland v. Washington*[, 466 U.S. 668 (1984)].
>
> As applied to the present case, trial counsel should have made sure that [petitioner]
> was of a clear mind, and that he understood all of the possible consequences of his
> plea.  Counsel should have made sure that [petitioner] understood the nature of the
> charges, and the possible defenses that he had.  Counsel needed to have discussed
> potential trial strategy, and he must have confirmed that [petitioner] was making his
> plea in a knowing, intelligent, and voluntary manner.  Counsel failed in that regard.
>
> Additionally, once trial counsel became aware of [petitioner's] concerns regarding
> the proceedings, counsel should have moved the court for permission to withdraw
> [petitioner's] plea.  Instead, counsel did nothing. . . .

(Doc. 7, p. 13; *see also* Doc. 6, Ex. 8).

Because petitioner's ineffective assistance of counsel claim was adjudicated on the merits

in the state courts, it is subject to review under the deferential standard of review set forth in 28

U.S.C. § 2254(d), as discussed above, *see supra* pp. 7-8.  The Ohio Court of Appeals, which was

the only state court to issue a reasoned decision addressing the claim raised on direct appeal,

overruled the assignment of error as follows:

To prevail, Myers must show deficient performance by counsel and prejudice.  To

establish prejudice, Myers must show "that there was a reasonable probability that, but for the errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." There is a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance.

Myers admits that his claims of ineffective assistance are largely based upon communications outside the record and that they should be reviewed through the postconviction remedies of R.C. 2953.21. The record does not demonstrate deficient performance or prejudice to Myers.

(Doc. 6, Ex. 10, p. 2) (footnote citations omitted).

The Ohio Court of Appeals correctly identified and reasonably applied the clearly-established two-part standard of review enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), in addressing petitioner's allegations of ineffective assistance by his trial counsel. *Cf. Hill v. Lockhart,* 474 U.S. 52, 58 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty plea convictions based on claims of ineffective assistance of counsel). Moreover, the appellate court's decision was based on a reasonable determination of the facts in light of the record evidence. Indeed, upon review of the record, the Court agrees with the state court's determination.

As the state appellate court recognized, to establish a *Strickland* violation, petitioner must demonstrate both (1) his trial attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. Under the first prong of the *Strickland* test, it must be shown that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.* at 689.

To satisfy the second "prejudice" prong of the *Strickland* test in a case such as this involving

a conviction upon entry of a guilty plea, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, he would not have pleaded guilty and would have insisted instead on proceeding to trial. *See Hill,* 474 U.S. at 59; *see also Railey v. Webb,* 540 F.3d 393, 415-16 (6th Cir. 2008), *cert. denied,* 129 S.Ct. 2878 (2009). In *Hill,* the Supreme Court stated:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill*, 474 U.S. at 59.

In the instant case, petitioner's conclusory and unsupported allegations are insufficient to establish, in accordance with the two-part standard adopted by the Supreme Court *Strickland* and applied in *Hill*, that his trial counsel acted unreasonably or that any error or omission on the part of counsel prejudicially affected his decision to enter a guilty plea.

First, there is simply no evidence in the record supporting the allegations that petitioner's counsel "pressured" petitioner to plead guilty or failed to ensure that petitioner "was of clear mind" and understood the nature of the charges when entering his guilty plea. To the contrary, at the plea hearing, petitioner affirmed that he was entering the plea of his "own free will," and the record reflects that petitioner understood the nature of the charge to which he was pleading guilty, the factual basis for that charge, the sentence he would receive upon entry of his guilty plea, and the constitutional rights he was giving up by opting to plead guilty rather than proceed to trial. (*See* Doc. 6, Tr. 3-11).

The record belies petitioner's contention that his counsel failed to ensure that he was mentally capable of entering a knowing and voluntary guilty plea. Petitioner stated at the hearing that he was "on psych medication" and that he had a "cloudy mind" given that he had "just signed [his] life away." (Doc. 6, Tr. 12-13). However, he also made it clear that he understood "everything" explained to him both by the court at the plea hearing and in the written plea entry that he had signed and gone over with his attorney. (Doc. 6, Tr. 12-13). Pointing out that petitioner had "made appropriate responses to all my questions," the trial judge expressed his belief that petitioner understood "everything we have gone over." (Doc. 6, Tr. 12). Prior to the hearing, petitioner's counsel also apparently ensured that petitioner understood the terms of the plea agreement, as counsel stated on the record that petitioner had "made appropriate answers to me also." (Doc. 6, Tr. 12). The colloquy continued in pertinent part:

> THE COURT: . . . .I know you're young and you're on medication, so I want to make sure you understand. I went over everything line by line. You understood everything I have explained to you line by line?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: That's what I mean. I understand you're on medications, but you have indicated all along you have understood everything. So, is there any questions that you have that you don't understand, anything that needs to be explained again?
>
> THE DEFENDANT: I understand everything you have said, sir.

(Doc. 6, Tr. 14). In light of the record evidence clearly demonstrating petitioner's competence and understanding of the plea proceedings, petitioner's conclusory allegation of ineffective assistance, without any evidentiary support, lacks merit and thus does not provide a basis for federal habeas relief.

Second, petitioner has not shown that his counsel acted unreasonably or prejudicially in advising him about entering a guilty plea based on any failure to investigate the charges or prepare

possible defenses. Petitioner has not provided any information regarding the substance of the evidence that would have been discovered or the defenses that could have been raised if counsel had conducted a more extensive investigation or prepared more thoroughly for trial. Moreover, petitioner has not argued, nor is there any evidence in the record to suggest, that (1) a further investigation would have uncovered exculpatory evidence that likely would have caused petitioner to proceed to trial rather than enter a guilty plea; or (2) potential affirmative defenses could have been asserted that likely would have succeeded at trial. Petitioner, therefore, has not demonstrated that he was prejudiced by counsel's omissions under the second prong of the *Strickand*/*Hill* test. *See Hill,* 474 U.S. at 59.

Finally, petitioner is unable to prevail on any claim that his counsel provided ineffective assistance by failing to object to the misinformation regarding post-release control that was relayed during the plea colloquy and in the plea and sentencing entries, or by failing to move to withdraw petitioner's guilty plea based on that ground. As discussed above, it appears from the record that petitioner was well aware that he faced a maximum life term of imprisonment without any promise or guarantee of release prior to the expiration of that sentence on either parole or post-release control. Because it is thus highly unlikely that the misinformation regarding post-release control played any role in petitioner's decision to enter a guilty plea, trial counsel's failure to inform petitioner of the error or to challenge the validity of his guilty plea on that basis did not result in prejudice under the second prong of the *Strickland*/*Hill* test. *See Hill,* 474 U.S. at 59.

Accordingly, in sum, petitioner is not entitled to habeas relief based on the ineffective of counsel claim alleged in Ground Two of the petition.

### C. Petitioner Waived The Claim In Ground Three Alleging That The Indictment Was "Fatally Defective" When He Pleaded Guilty To The Challenged Murder Charge

In Ground Three of the petition, petitioner claims that the indictment was "fatally defective"

and "voidable for lack of subject matter jurisdict[]ion" because it did not include the *mens rea* element of the murder offense he was convicted of committing upon entry of his guilty plea. (Doc. 1, p. 9). In the return of writ, respondent contends that the ground for relief does not state a cognizable claim subject to federal habeas review and that, in any event, petitioner waived the claim by pleading guilty to the challenged murder charge. (Doc. 6, Brief, pp. 4-5). Respondent's arguments have merit.

By pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings. *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991). A "guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *see also McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985). Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, the plea was not intelligently or voluntarily entered. *Tollett,* 411 U.S. at 267; *see also Campbell,* 769 F.2d at 315.

"The principal exception to this rule is the so-called *Blackledge/Menna* principle that 'a plea of guilty to a charge does not waive a claim that–judged on its face–the charge is one which the State may not constitutionally prosecute.'" *United States v. Drew,* 200 F.3d 871, 881 (D.C. Cir. 2000) (quoting *Menna v. New York,* 423 U.S. 61, 62-63 n.2 (1975) (per curiam)); *see also Blackledge v. Perry,* 417 U.S. 21 (1974). Specifically, in *Blackledge,* 417 U.S. at 29-31, the Supreme Court held that the habeas petititoner, who had successfully pursued an appeal to obtain a new trial from a misdemeanor conviction, had not waived a meritorious claim of prosecutorial vindictiveness

21

stemming from the State's decision to pursue a more serious felony charge on remand; the court

reasoned that although petitioner had entered a guilty plea to the felony charge, the claim was not

waived because it implicated the "right not to be haled into court at all upon the felony charge" and

thus "went to the very power of the State to bring the defendant into court to answer the charge

brought against him." In *Menna,* 423 U.S. at 61-62, the Supreme Court extended *Blackledge* to

allow review of a double jeopardy claim brought by a defendant, who had served a 30-day contempt-

of-court civil sentence for his failure to testify before a grand jury, challenging his subsequent

conviction upon entry of a guilty plea to a criminal indictment based on the same conduct; in so

holding, the Court stated: "We do not hold that a double jeopardy claim may never be waived. We

simply hold that a plea of guilty to a charge does not waive a claim *that judged on its face* the charge

is one which the State may not constitutionally prosecute." *Id.* at 62.

The *Blackledge/Menna* exception for jurisdictional claims has not been extended "beyond

the specific claims alleged in those cases" to encompass anything more than that the "applicable

statute is unconstitutional or that the indictment has failed to state an offense." *Williams v. Warden,*

*Noble Corr. Inst.,* No. 1:07cv653, 2009 WL 6058620, at * 15 (S.D. Ohio June 4, 2009) (Black, M.J.)

(Report & Recommendation) (quoting *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir. 1989)

(internal citation and quotation omitted), *amended on other grounds,* 907 F.2d 115 (9th Cir. 1990)),

*adopted*, 2010 WL 1031576 (S.D. Ohio Mar. 16, 2010) (Spiegel, J.). In fact, in a later decision, the

Supreme Court limited the *Blackledge/Menna* doctrine "to cases in which the judge could determine

at the time of accepting the plea, from the face of the indictment or from the record, that the

government lacked the power to bring the indictment." *See id.* (citing *United States v. Broce,* 488

U.S. 563, 569, 574-76 (1989)).

In the instant case, petitioner's allegations challenging the propriety of the indictment do not

fall within the *Blackledge/Menna* exception or otherwise give rise to concerns of a jurisdictional defect which invalidated petitioner's guilty plea.  *See Williams, supra,* 2009 WL 6058620, at * 16; *cf. United States v. Cotton,* 535 U.S. 625, 630-31 (2002) (indictment omissions do not deprive a court of "jurisdiction," or in other words, of "its power to adjudicate a case").[3]

In any event, petitioner's claim attacking only the manner in which he was charged with a crime does not trigger federal constitutional concerns subject to review in this federal habeas proceeding.  Indeed, it is well-settled that there is not even a federal constitutional right to an indictment in state criminal proceedings.  *Hurtado v. California,* 110 U.S. 516, 537-38 (1884); *see also Branzburg v. Hayes,* 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states. . . .  It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule."); *Watson v. Jago,* 558 F.2d 330, 337 (6th Cir. 1977); *Fears v. Miller*, No. 1:09cv698, 2009 WL 6315341, at *9 (N.D. Ohio Dec. 1, 2009) (Report & Recommendation), *adopted,* 2010 WL 1258096 (N.D. Ohio Mar. 30, 2010); *Harsh v. Warden, Chillicothe Corr. Inst.*, No. 1:08cv433, 2009 WL 3378246, at *1, *20 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.).  As long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied.  *Koontz,* 731 F.2d at 369; *Watson,* 558 F.2d at 338; *see also Williams v. Haviland,* 467 F.3d 527, 535 (6th Cir. 2006).

---

[3]*See also United States v. Ball*, No. 93-3743, 1993 WL 524240 (6th Cir. Dec. 15, 1993) (in the absence of a showing that the indictment failed to state an offense, or of any claim that the defendant did not have notice of the charge against him or was misled by the indictment, the defendant failed to establish a jurisdictional defect which invalidated his guilty plea); *Burrows v. Engle,* 545 F.2d 552, 553 (6th Cir. 1976) (guilty plea precluded petitioner from raising a claim based on "allegations of technical defects in the indictment"); *United States v. Quesada-Lerma,* 197 F. App'x 308 (5th Cir. 2006) (per curiam) (defendant waived an indictment-error claim by pleading guilty because an "allegedly defective indictment does not deprive a district court of jurisdiction"); *United States v. Christian,* 184 F. App'x 319, 321 (4th Cir. 2006) (per curiam)(holding that the defendant's challenges to his arrest and indictment were precluded by his guilty plea).

Accordingly, in sum, the undersigned concludes, as argued by respondent in the return of writ, that petitioner waived the claim of non-jurisdictional error alleged in Ground Three of the petition when he voluntarily entered his guilty plea in this case. In any event, petitioner's allegations of error in the indictment are insufficient to give rise to a cognizable constitutional claim subject to review in this federal habeas proceeding.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Three of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling or whether petitioner has stated a viable constitutional claim. A certificate of appealability also should not issue with respect to the claims alleged in Grounds One and Two, which have been addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, **DENY** petitioner leave to appeal *in forma pauperis* upon any showing of financial necessity. *See* Fed. R. App. P.

24

24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


                                         s/Stephanie K. Bowman
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
## WESTERN  DIVISION

ADAM S. MYERS,                                          Case No. 1:10-cv-343
      Petitioner

      vs                                               Bertelsman, J.
                                           Bowman, M.J.

WARDEN, WARREN
CORRECTIONAL INSTITUTION,
      Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).